PHILLIP A. TALBERT
United States Attorney
ROBERT L. VENEMAN-HUGHES
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:23-MJ-00041-CDB |
| Plaintiff, | **UNITED STATES' MOTION FOR DETENTION** |
| Vs. | Date: November 9, 2023<br>Time: 2:30 PM |
| JOSHUA KIMBALL, | Judge: Hon. Christopher D. Baker |
| Defendant. | |

The United States urges this court to detain Joshua Kimball both as a flight risk and a danger to the community.

## I. <u>LAW</u>

The United States moves for detention under 18 U.S.C. § 3142(f)(1)(E), a felony that involves the possession of a firearm, and under 18 U.S.C. § 3142(f)(2)(B), a case that involves a serious risk that a person will obstruct or attempt to obstruct justice.

The burden lies on the Government to show a risk of nonappearance by a preponderance of evidence, *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), and danger to the community by clear and convincing evidence, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The

Court makes that determination by considering the factors in 18 U.S.C. § 3142(g), making an "individualized" determination. *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006).

## II. ARGUMENT

### A. All four 18 USC 3142(g) factors support detention

#### 1. Nature and Circumstances of the Offense Charged

The defendant is charged with serious felonies, and the circumstances of those offenses are particularly concerning. As outlined in the affidavit, ECF No. 1, Kimball was the architect of a firearms trafficking scheme linked to at least 103 guns found in connection with crimes throughout California, Nevada, Arizona and Mexico. Since the complaint was sworn, agents have uncovered additional evidence that the defendant's firearms trafficking scheme in Bakersfield through "Show Off Sports" was connected to and a continuation of his prior firearms trafficking scheme through a Missouri FFL and "American Warrior Enterprises."[1] The government proffers that these two businesses and federal firearms licenses are part of the same course of related and continuing conduct based on the location of firearms recovered, statements made by the defendant, and an analysis of firearms records.

The seriousness of defendant's conduct, especially considering the circumstances of the charged offenses, supports detention in this case.

#### 2. Weight of Evidence

The weight of the evidence is the least important of the various factors, but it weighs in favor of detention. Here, defendant sold firearms as part of his illegal scheme to an undercover agent. He made statements both to the undercover agent and in interviews with agents prior to the service of the search warrant that show he knew the wrongfulness of his actions, telling the undercover agent how to conceal firearms transactions so that no one "points a finger at us", and then lying about the character of his

---

[1] Defendant's Missouri FFL was connected to an organization called "American Warrior Enterprises" or AWE. Agents have determined that AWE operated as a similar illegal gun trafficking scheme or gun club as did Show Off Sports, LLC. The government proffers that Kimball shut down AWE when investigators in Missouri began to look into the operation, moving his operations to Show Off Sports LLC.

business to agents prior to the service of warrants. Computer and other records recovered in the search warrant also provide evidence that this sale was not a one-off occurrence but the regular course of defendant's business, and multiple witnesses have given statements that the defendant sold them illegal firearms.

While the weight of the evidence is the least important factor, the weight here is strong, and so supports detention.

### 3. History and Characteristics of Defendant

Defendant has a felony conviction for fraud in Kern County case BF139514A with a date of conviction on June 18, 2012.[2] According to court records, defendant took out eight insurance policies on a vehicle from eight different insurance companies, with seven of those policies obtained between December 20, 2007 and December 27, 2007. On December 31, 2007, Kimball reported to all the companies that his vehicle had been in an accident. Traffic collision reconstruction experts determined that the accident could not have occurred in the manner Kimball described.

Defendant was also arrested for a felony related to brandishing in a road rage incident in Arizona in 2022. The case dismissed after a law enforcement agency failed to preserve a necessary piece of evidence.

Defendant has substantial out of state ties. He maintained a firearms business in Missouri until late 2021 (ECF No. 1 at 15) at an address the defendant continues to use as the registration address for his primary vehicle. His primary vehicle is also registered in Missouri. Defendant indicated to ATF agents who interviewed him in 2021 in connection with that Missouri FFL that he was operating in Missouri at that time.

Additionally, defendant told agents just prior to the service of the search warrant that he had formerly been involved with some sort of firearms business in Texas. At the time of his arrest,

---

[2] Defendant had his conviction sealed and set aside in 2014 pursuant to Cal. P.C. 1203.4. Relief under this section is limited and does not affect firearm prohibitions or stop a prior conviction from being used to enhance a sentence. *United States v. Hayden*, 255 F.3d 768, 771-772 (9th Cir. 2001). Because of a clerical error on the part of the Kern County Superior Court, the 2012 felony was never entered into criminal databases and portions of the file were lost or destroyed. However, Kern County court records clearly show the date of conviction, the charge of conviction, and its final disposition.

defendant's sole occupation was the operation of his illegal firearms scheme and the Show Off Sports firearms shop.

Collectively, these circumstances indicate that the defendant has substantial out-of-district ties and has a history of felony conduct, all supporting detention.

### 4. Nature and Seriousness of the Danger to the Community

According to agents, approximately 900-1000 firearms remain unaccounted for that were acquired by defendant through his illegal firearms trafficking scheme.

Approximately 700 guns were unaccounted for when defendant closed his Missouri FFL. Over 100 of those guns have been recovered in connection with crimes in California and nearby states, centered around Bakersfield, Calif. Of those recoveries, significant clusters of guns have been located connected to members of the Bulldogs criminal street gang in Fresno, the Norteno criminal street gang in Bakersfield, and Armenian drug traffickers in Los Angeles County. Roughly 600 guns are still unaccounted for.

Over 100 guns were seized by agents during the service of search warrants in this case, including over ten silencers and at least two fully automatic machine guns. Short-barrel rifles and shotguns were also seized in connection with this case. However, a preliminary search by agents of Show Off Sports' records suggest that approximately 300 and 400 guns remain unaccounted for that should have been in Show Off Sports' inventory[3]. Defendant additionally indicated to agents in an interview that between 200 and 400 guns belonging to Show Off Sports had been "loaned" to others, corroborating this estimate.

Defendant has additionally engaged in obstruction of justice conduct. He told undercover agents to call him prior to speaking to police about the guns he sold, which the government proffers was an attempt to coordinate stories in case of law enforcement discovery. He additionally instructed undercover agents in how to conduct illegal firearms transactions so that no one could "point the finger

---

[3] The government proffers this as a preliminary estimate. Agents are still working through the seized records, and according to agents the records were poorly maintained. The actual number of unaccounted-for guns could be higher or lower; this number represents a best estimate based on the state of the evidence at the time of this motion.

at all of us." When agents informed defendant he was under arrest at the conclusion of their interview, he lunged away from agents and attempted to shut down and lock his laptop so they could not seize his records.

Defendant finally told agents, both undercover and identified, that he had multiple unknown business partners in his operation.

Taken collectively, defendant poses a significant danger to the community were he released. With approximately 1000 guns unaccounted for, defendant has access to a ready store of weapons with which to continue his illegal business. Defendant further may communicate with other, unknown members of his conspiracy in an effort to conceal evidence or warn them about law enforcement investigation. Defendant has already signaled his intention to undercover officers to coordinate witness accounts of his firearms scheme, and if released the government believes he will contact his former "customers" in an effort to conceal his activities. Prior government interventions, including the forfeiture of his prior FFL, have not deterred the defendant from selling illegal guns, many of which have ended up in criminal hands. The government argues the defendant will continue to do so if he is released. The proffered evidence additionally shows the defendant's intent to obstruct justice and destroy evidence when and where he can.

### B. No condition or combination of conditions can ensure the defendant's appearance or the safety of the community if he is released

Conditions and combinations of conditions are good only so far as the defendant can be trusted to follow them. The defendant is accused of orchestrating a scheme to sell a large quantity of illegal firearms, a scheme he has represented involves many unknown partners. Agents have been unable to locate approximately 1000 firearms that records suggest defendant should have in his possession, and defendant said that at least 200-400 of those firearms had been loaned to "employees". One of the risks in this case is that defendant will direct those unknown partners or employees to dispose of, sell, or conceal these illegal firearms.

Risks like this are those "that involve communications and are therefor not susceptible to effective monitoring." *United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008). Such conditions

depend only on the "good faith compliance" of the defendant. *Id.* Given the defendant's attempts to obstruct justice, his pre-instruction of potential witnesses, his history of fraud, and his prior iterations of this scheme, the defendant cannot be trusted to comply. Instead, as he said in a recorded jail telephone call on the morning of November 8, 2023, "bad news is always good publicity," indicating his intent to continue his illegal scheme.

Defendant's proffered conditions are also insufficient. Electronic monitoring does not prevent communication, and a search and seizure waiver does not prevent him from directing confederates to take action related to the unaccounted-for weapons. A third-party custodian also cannot effectively monitor his communications, and given his ties out of the District a promise to stay in the district is only as good as the defendant's word.

### III. CONCLUSION

The Court should detain the defendant pending trial as a flight risk and a danger to the community.

                                PHILLIP A. TALBERT
                                United States Attorney

Date: November 8, 2023                        By: /s/ Robert L. Veneman-Hughes
                                ROBERT L. VENEMAN-HUGHES
                                Assistant United States Attorney